UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PAULINE SHIEGEL,<br><br>       Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>       Defendant. | Case No. 2:21-cv-00556-NJK<br><br>**ORDER**<br><br>[Docket Nos. 30, 32] |

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. Currently before the Court is Plaintiff's Motion for Reversal and/or Remand. Docket No. 30. The Commissioner filed a response in opposition and a cross-motion to affirm. Docket Nos. 32, 33. Plaintiff filed a reply. Docket No. 34. The Court ordered supplemental briefing on January 18, 2022. Docket No. 35. Plaintiff filed a supplemental brief and the Commissioner filed a supplemental response. Docket Nos. 36, 37. The parties consented to resolution of this matter by the undersigned magistrate judge. *See* Docket No. 3.

**I.    STANDARDS**

   A.    Disability Evaluation Process

The standard for determining disability is whether a social security claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(3)(A). The disability determination is made by following a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). The first step addresses whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§

404.1520(b), 416.920(b).[1]  The second step addresses whether the claimant has a medically determinable impairment that is severe or a combination of impairments that significantly limits basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  The third step addresses whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  There is then a determination of the claimant's residual functional capacity, which assesses the claimant's ability to do physical and mental work-related activities.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The fourth step addresses whether the claimant has the residual functional capacity to perform past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The fifth step addresses whether the claimant is able to do other work considering the residual functional capacity, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).

       B.    Judicial Review

After exhausting the administrative process, a claimant may seek judicial review of a decision denying social security benefits.  42 U.S.C. § 405(g).  The Court must uphold a decision denying benefits if the proper legal standard was applied and there is substantial evidence in the record as a whole to support the decision.  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*

**II.    BACKGROUND**

       A.  Procedural History

On September 26, 2017, Plaintiff protectively filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, alleging an onset date of November 19, 2016.  *See, e.g.,* Administrative Record ("A.R.") 211-224.

---

[1] The five-step process is largely the same for both Title II and Title XVI claims.  For a Title II claim, however, a claimant must also meet insurance requirements.  20 C.F.R. § 404.130.

On November 14, 2017, Plaintiff's claims were initially denied. A.R. 73-88. On May 8, 2018, Plaintiff's claims were denied on reconsideration. A.R. 89-116. On May 23, 2018, Plaintiff filed requested a hearing before an administrative law judge. A.R. 134-136. On May 21, 2020, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ Barry H. Jenkins. *See* A.R. 36-72. On March 4, 2020, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability through the date of the decision. A.R. 17-30. On February 3, 2021, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. A.R. 1-6.

On April 3, 2021, Plaintiff commenced this action for judicial review. Docket No. 1.

B. The Decision Below

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920 A.R. 17-30. At step one, the ALJ found that Plaintiff meets the insured status requirements through December 31, 2018, and has not engaged in substantial gainful activity since the alleged onset date. A.R. 20. At step two, the ALJ found that Plaintiff has the following severe impairments: disorder of the cervical spine and left shoulder and osteoarthritis of the bilateral hands. A.R. 20-23. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 23. The ALJ found that Plaintiff has the residual functional capacity to

> perform all posturals without limitations except that she can frequently balance and never able to climb ropes, ladders, or scaffolds; she can frequently reach overhead with her right, dominant upper extremity; she can occasionally reach overhead with her left, non-dominant upper extremity; she can frequently, but not continuously finger and handle objects; and, finally, she must avoid concentrated exposure to hazardous machinery, unprotected heights, and operational control of moving machinery.

A.R. 23-28. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a security guard and that the work does not require the performance of work-related activities that are precluded by Plaintiff's residual functional capacity. A.R. 28-29. The ALJ included an

alternative finding that Plaintiff could also perform other jobs existing in significant numbers in the national economy.  A.R. 29.

Based on all of these findings, the ALJ found Plaintiff not disabled through the date of the decision.  A.R. 29-30.

## III. ANALYSIS AND FINDINGS

Plaintiff raises a single issue on appeal: that the ALJ erred by failing to properly consider and account for her posttraumatic stress disorder at Step Two, which resulted in both a finding that her mental impairments were non-severe and residual functional capacity without any limitations to accommodate her mental impairments.  Docket No. 30 at 3, 9-15.  Plaintiff submits that the evidence she submitted for consideration established that her posttraumatic stress disorder caused more than minimal limitations in her functioning.  Id. at 12-14.  Plaintiff submits that the ALJ improperly discounted Dr. Ley's assessment, which was the only medical opinion evidence that assessed her mental limitations and found mild and moderate limitations in all four areas of mental functioning.  Id. at 14-15.  Finally, Plaintiff submits that the failure to account for her mental limitations was not supported by substantial evidence and was not harmless error.  Id. at 10-11.  Plaintiff asks the Court to remand this case for further administrative proceedings.  Id. at 15.

In response, the Commissioner submits that the ALJ properly conducted the step two analysis, finding that Plaintiff had only mild limitations in the four areas of mental functioning.  Docket No. 32 at 2-8.  Specifically, the Commissioner submits that the ALJ's analysis and determinations about Plaintiff's capacity were conducted according to the law and were supported by substantial evidence.  Id. at 4-7.  The Commissioner submits that, while mild limitations might, in some cases, require the inclusion of work-related limitations in the residual functional capacity, Plaintiff fails to show what other limitations should have been included to account for her mental limitations.  Id. at 7.  The Commissioner submits that the ALJ did not err in his analysis and asks the Court to deny Plaintiff's motion to remand and to affirm the Commissioner's final decision.  Id. at 7-8.

Step two of the sequential evaluation process requires the ALJ to "consider the medical severity of [the claimant's] impairment(s)."  20 C.F.R. § 416.920(a)(4)(ii).  The ALJ must discuss

4

all medically determinable impairments. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). *See also Hutton v. Astrue*, 491 Fed.Appx. 850, 850 (9th Cir. 2012). To establish a medically determinable impairment, Plaintiff must submit objective medical evidence from an acceptable medical source. 20 C.F.R. §§ 404.1521, 416.921. The impairment must "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* A claimant's own statements of symptoms are insufficient to establish the existence of an impairment. *Id.*

An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities, including physical functions; the capacity to see, hear, or speak; the ability to understand, carry out, or remember simple instructions; using judgment; responding appropriately to work situations; and dealing with work routine changes. 20 C.F.R. §§ 404.1522, 416.922. For an impairment to be medically determinable, it must exist or be expected to exist for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. The effectiveness of treatment is a relevant factor in the ALJ's determination of the severity of symptoms. *See* 20 C.F.R. § 416.929(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a complaint that a limitation is severe); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (holding that conditions effectively controlled with medication are not disabling for the purpose of determining benefit eligibility).

"When arguing on appeal that the ALJ failed to include a severe impairment at step two, a claimant cannot simply point 'to a host of diagnoses scattered throughout the medical record.' Rather, a claimant must specifically identify functional limitations that the ALJ failed to consider in the sequential analysis." *Geoffrey William H. v. Comm'r of Soc. Sec.*, 2020 WL 1918098, at *8 (E.D. Wash. Feb. 24, 2020) (quoting *Cindy F. v. Berryhill*, 367 F.Supp.3d 1195, 1207 (D. Or. 2019)). If the Court finds that an error occurred at step two, such error is considered harmless, and thus not warranting remand, when the decision reflects that the ALJ considered any limitations posed by the impairment at either step four or step five of the sequential evaluation process. *Lewis v. Astrue*, 498 F.3d 90, 911 (9th Cir. 2007).

An ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Yet, an ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent*, 739 F.2d at 1395). However, an ALJ "is not required to discuss evidence that is neither significant nor probative. . ." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006 (9th Cir. 2003). A social security claimant bears the burden of establishing that an ALJ's error prejudiced the outcome of her decision. *See, e.g.*, *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

If the Court determines that the ALJ erred, it must then conduct a harmless error analysis. *See, e.g.*, *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). An error is harmless in this context when the reviewing court can "confidently conclude" that the error was "inconsequential to the ultimate nondisability determination." *Id.* The application of the harmless error analysis is "fact-intensive," and the court affords the decision no presumptions, but instead "analyze[s] harmlessness in light of the circumstances of the case." *Id.* at 1172 (citing *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012)).

Here, in discussing Plaintiff's mental limitations, the ALJ found that Plaintiff's mental impairments did not cause more than minimal limitations on Plaintiff's ability to perform basic mental work activities and, thus, the limitations are nonsevere. A.R. 21-22. In reaching this conclusion, the ALJ noted that Plaintiff complained of several symptoms, including "not being able to get up, sleeping excessively, depressed mood, tearfulness, lack of interest, low motivation, anxiety, fatigue, hopelessness, passive suicidal ideation, flashbacks, and feelings of worthlessness." A.R. 22. The ALJ discussed that these symptoms did not appear on patient health questionnaires prior to April 2019 and that Plaintiff reported improvement in her symptoms due to both medication and therapy. *Id.* The ALJ also noted that, despite appearing tearful occasionally, Plaintiff's mental status evaluations were generally normal, and no evidence suggested Plaintiff needed either urgent or in-patient treatment for her symptoms. *Id.*

The ALJ discussed the four areas of mental functioning and found mild limitations in all four of them. *Id.* In finding a mild limitation in understanding, remembering, or applying

6

information, the ALJ found that, while Plaintiff testified that she occasionally needed reminders to take her medications or go to appointments, she "generally denied experiencing memory loss" and her providers never documented these problems, consistently finding her cognition to be normal. *Id.* In finding a mild limitation in interacting with others, the ALJ noted that Plaintiff reported distrust in men, causing anxiety, lacking patience with others, and engaging in emotional or aggressive lashing out toward others. *Id.* The ALJ found that Plaintiff was generally described as "being cooperative and polite with good eye contact." *Id.* In finding a mild limitation in concentrating, persisting, or maintaining pace, the ALJ stated that the record showed that complaints of issues in this area were rare. *Id.* Finally, in finding a mild limitation in adapting or managing oneself, the ALJ found that, despite Plaintiff experiencing homelessness, she was able to travel to live with her daughter and was generally reported to be well-groomed. *Id.*

In assessing these findings, the ALJ found that Plaintiff's "medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and that the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." *Id.* The ALJ determined Plaintiff's mental conditions were nonsevere. *Id.*

The ALJ also discussed the opinion evidence submitted about Plaintiff's mental limitations. A.R. 23. The ALJ noted that Dr. Ley assessed Plaintiff prior to beginning her treatment and found that Plaintiff had a moderate limitation in her ability to understand, remember, or apply information and her ability to interact with others. *Id.* The ALJ also noted that Dr. Ley assessed Plaintiff as having a mild to moderate limitation in her ability to concentrate, persist, or maintain pace and her ability to adapt or manage oneself. *Id.* The ALJ discussed Dr. Ley's findings as to Plaintiff's work-related limitations in each of the functional areas, but found Dr. Ley's opinion only minimally persuasive. *Id.* The ALJ accorded Dr. Ley's opinion little weight because the assessment of Plaintiff's functioning was conducted the day before her treatment started and was inconsistent with the record, which supported a finding that the limitations were less intense than Dr. Ley's mental functioning opinion suggested. *Id.* In discounting the intensity of any limitations, the ALJ noted that reports in the record of difficulties interacting with others

7

were rare, as were references to Plaintiff being unable to concentrate or remember things. *Id.* The ALJ also noted that the record had few references to Plaintiff "exhibiting behavioral extremes" or being unable to interact with others. *Id.* Finally, the ALJ discounted Dr. Ley's opinion as to Plaintiff's ability to adapt and manage herself because the record indicated that Plaintiff could navigate and use public transportation and was noted as being well-groomed. *Id.*

At no point in his discussion of Plaintiff's abilities or impairments did the ALJ discuss posttraumatic stress disorder ("PTSD"). *See* A.R. 17-30. The only mental impairments the ALJ discussed by name were "affective/mood disorder and anxiety-related disorder." A.R. 21-22. While there was some discussion of symptoms of PTSD, the actual diagnosis was not named, nor was its medical listing. A.R. 17-30.[2]

The Court finds that significant probative evidence exists that Plaintiff had a medically determinable impairment of PTSD that the ALJ failed to address at step two of the disability analysis. Medical records submitted to the ALJ indicate that Plaintiff first showed symptoms of PTSD in August 2018 and continued to have documented symptoms and a proper diagnosis in her medical records up until the time of the hearing. *See, e.g.*, A.R. 506-508, 512-515, 519-520, 524-525, 540-541, 547-549, 551, 561-566, 619, 629, 649-658, 663. Dr. Ley included a diagnosis of PTSD in her 2020 assessment of Plaintiff's mental functioning. A.R. 663. Moreover, Plaintiff testified to her PTSD at the hearing and her attorney representative discussed it. *See, e.g.*, A.R. 40, 54, 56. The diagnosis of PTSD was also included in Plaintiff's brief to the Appeals Council. A.R. 322-324. Given that significant probative evidence exists that Plaintiff had PTSD and that the condition persisted for at least a twelve-month period, the Court finds that it was error for the ALJ to not discuss his reasons for disregarding the evidence of PTSD at step two of the disability analysis. *Cf Nadon v. Saul*, 851 Fed.Appx. 24, 27-28 (9th Cir. 2021). *See also M.F. v. Kijakazi*, 2021 U.S. Dist. LEXIS 223285, at *14-16 (N.D. Cal. Nov. 18, 2021). The Court finds, however, that the error was harmless.

---

[2] PTSD is considered a trauma-related or stressor-related disorder as contemplated by Social Security medical listing 12.15.

8

While Plaintiff's medical records establish that she had PTSD, her treatment notes and Plaintiff's testimony establish that her symptoms were mild and manageable, particularly with her continuing care of a medication regimen and consistent access to mental health professionals, which made her symptoms notably less severe and manageable. *See, e.g.*, A.R. 56-57, 506-508, 540-542, 547-549, 564-569, 641-644, 649-652. Though the ALJ did not address PTSD by name, he did consider all the symptoms Plaintiff alleges having from PTSD when assessing her mental limitations. *See* A.R. 21-23. The ALJ assessed these symptoms alongside documentation from Plaintiff's treatment records showing rare indicia that her mental functioning was limited in any of the four areas and considering her testimony at her hearing. *Id.*

Plaintiff did not allege mental limitations in either her initial applications for benefits or her requests for reconsideration. A.R. 125-126, 211-224.[3] Moreover, Plaintiff herself reported no mental limitations or problems with her mental functioning on her self-assessments about her functional capabilities submitted for consideration alongside her applications. A.R. 255. Treatment notes from the time her applications were submitted and throughout the pendency of her application process generally indicate normal mood regulation and mental functioning. *See, e.g.*, A.R. 332-33, 336-337, 388-394, 396-398, 447-449, 451-455, 499-500, 529-531, 571-573, 619-623, 625, 630, 633, 638. Finally, at her hearing before the ALJ, Plaintiff testified that problems arising from physical pain were the reason she was unable to work. A.R. 48. While her testimony discussed difficulties interacting with individuals, primarily men, Plaintiff did not testify that these difficulties caused her to stop working. A.R. 53, 56. Moreover, Plaintiff testified that, trust issues with men, she was still able to work alongside men for many years. A.R. 56-57.

Plaintiff's arguments about the ALJ improperly discrediting Dr. Ley's opinions are therefore without merit. The Court finds that the ALJ properly discounted Dr. Ley's opinions under the current regulations, which apply to Plaintiff's applications for benefits. The ALJ clearly stated the reasons why he found that Dr. Ley's opinion should only be afforded little weight, including discussion as to the consistency and supportability factors as required by the applicable

---

[3] Plaintiff first submitted evidence of her PTSD to Social Security for consideration on November 1, 2019. A.R. 310.

9

Social Security regulations. A.R. 23. *See also* 20 C.F.R. §§ 404.1520c, 416.920c. The ALJ was not required to accept Dr. Ley's opinion as true under the new regulations and his decision on how much weight to accord it was supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 2022 U.S. App. LEXCIS 10977, at * 14-15 (9th Cir. 2022).

Plaintiff's contention that the ALJ failed to have an agency expert properly evaluate her mental functioning as submitted by her doctor, Dr. Ley, is also unpersuasive. While the ALJ has a special duty to develop the record fully and fairly to ensure that the claimant's interests are considered, *see Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001), there is no indication that the record was not fully developed at the time of this case. This duty is only triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the record. *Id.* The Certified Administrative Record at the time of the hearing before the ALJ contained Plaintiff's mental health and psychiatric records and Plaintiff does not now submit that the record was inadequate or ambiguous at the time the ALJ's determination was made, nor does she point to later submitted records that undermine the adequacy of the record.

Ultimately, it is Plaintiff's duty to prove that she is disabled. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) ("An individual shall not be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Secretary may require."). This includes the burden to establish that any error was not harmless. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Plaintiff points to no additional information or further limitations that would need to be included in her residual functional capacity, nor does she establish that mentioning PTSD by name would have been consequential in the ALJ's ultimate determination. Based on this record, the Court finds that such a mention would not have been of consequence. Accordingly, the Court finds that any error from the ALJ's failure to discuss PTSD by name was harmless error.

## IV. CONCLUSION

Based on the forgoing, the Court **DENIES** the motion for reversal or remand, Docket No. 30, and **GRANTS** the countermotion to affirm, Docket No. 32. The decision below is **AFFIRMED**. The Clerk's Office is instructed to **ENTER FINAL JUDGMENT** accordingly and to **CLOSE** this case.

IT IS SO ORDERED.

Dated: July 1, 2022.

_____
NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE